UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANGELA M. FRYE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 3:16-CV-658 RLM |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

Angela Frye seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court reverses the Commissioner's decision and remands the case for further proceedings.

I. BACKGROUND

Angela Frye filed her original applications in 2012, alleging disability as of Nov 1, 2009. When those applications were denied, she reapplied alleging disability as of January 2012 due to multiple mental and physical impairments. Ms. Frye was 51 when she refiled, had a high school education, and was insured

---

[1] Nancy A. Berryhill, the Acting Commissioner of Social Security, has been substituted as the named defendant, pursuant to Fed. R. Civ. P. 25(d)(1).

for Disability Insurance Benefits through June 30, 2014. Her renewed applications were denied initially, on reconsideration, and after an administrative hearing in March 2016, during which Ms. Frye amended the alleged onset date to November 15, 2015, expressly waived her claim to Disability Insurance Benefits (because the alleged onset of disability occurred after her date last insured), and pursued only her Supplemental Security Income claim.

At the hearing, the ALJ heard testimony from Ms. Frye and a vocational expert, Sharon Ringenberg. Based on the evidence presented, he found that:

- Ms. Frye had severe impairments: bipolar disorder, panic disorder with agoraphobia, anxiety disorder, fibromyalgia, diabetes mellitus II, lumbar disc herniation at the L5-S1 level, degenerative disc changes at L4-5 without focal herniation or headaches; and hypertension (20 CFR §§ 404.1520(c) and 416.920(c)).

- Her impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1, specifically Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders)).

- Ms. Frye had the residual functional capacity to perform light work with limitations.[2]

- Ms. Frye couldn't perform her past work as a retail worker (DOT 201.462-014) and school bus driver (DOT 913.463-010), but could

---

[2] The ALJ found that Ms. Frye could: (1) understand, remember and carry out simple, routine tasks and make simple work-related decisions; (2) frequently respond appropriately to supervisors, coworkers and the general public; (3) maintain frequent changes in the work setting; (4) occasionally lift, carry, push and pull 20 pounds, and frequently lift, carry, push and pull 10 pounds; (5) sit, stand, and walk for 6 hours, if she was able to alternate between sitting and standing for five minutes every 30 minutes and to sit for five minutes after every 30 minutes of walking; (6) frequently reach overhead with her right upper extremity; (7) occasionally climb ramps and stairs, but not ladders, ropes and scaffolds; (8) occasionally stoop, kneel, crouch, and crawl, but not balance; (9) frequently operate motor vehicles; and (10) frequently endure humidity, wetness, dust, odors, fumes, pulmonary irritants, exposure to extreme cold and heat.

perform other work that existed in significant numbers in the national economy, including work as a routing clerk (DOT 222.587-038 - 150 jobs statewide/22,000 nationally),[3] ticket taker (DOT 344.667-010 - 150 jobs statewide/10,000 nationally), and mail sorter (DOT 209.687-026 - 1000 jobs statewide/50,000 nationally).

The ALJ concluded that Ms. Frye wasn't disabled within the meaning of the Social Security Act, and wasn't entitled to Disability Insurance Benefits or Supplemental Security Income. When the Appeals Council denied Ms. Frye's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Frye contends that the ALJ erred as a matter of law in denying her application for Disability Insurance Benefits, and that his findings regarding her residual functional capacity and ability to perform other work at steps 4 and 5 of the sequential evaluation aren't supported by substantial evidence. More specifically, she alleges that:

> (1) The ALJ failed to consider the results of a December 2015 MRI showing nerve root compression in the lower lumbar spine (AR 656-658) or Listing 1.04 (disorders of the spine) when he concluded that "the radiographic evidence" didn't support her subjective complaints regarding the severity and limiting effects of her physical impairments, and found that

---

[3] The ALJ incorrectly identifies the job as "retail" clerk in his decision.

she retained the functional capacity to perform a limited range of light work.

(2) The ALJ relied on, and gave too much weight to, findings and medical opinions that predated the alleged onset of disability (November 1, 2015) and the December 2015 MRI – specifically an October 2015 RFC assessment by Dr. D. Whitley, a state agency consulting physician (AR 210-213).

(3) The ALJ found that Ms. Frye had moderate limitations in concentration, persistence, and pace, but didn't adequately identify what those limitations were in his hypothetical to the vocational expert. Citing Varga v. Colvin, 794 F.3d 809, 814-15 (7th Cir. 2015) (holding that a hypothetical question limiting a person to simple, repetitive work that was "free of fast paced production requirements" didn't provide the vocational expert with sufficient information regarding the limitations on concentration, persistence or pace).

II. LEGAL STANDARD

The issue before the court isn't whether Ms. Frye is disabled, but whether substantial evidence supports the ALJ's decision that she is not. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S.

4

389, 401 (1971); Jones v. Astrue, 623 F.3d at 1160. In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but it "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005).

The ALJ isn't required "to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

III. DISCUSSION

Ms. Frye didn't expound on her argument regarding the denial of Disability Insurance Benefits in her briefs or during oral arguments before this court. To receive Disability Insurance Benefits, she had to establish disability on or before June 30, 2014 (her date last insured). At the administrative hearing in March 2016, Ms. Frye effectively abandoned any claim of disability before November 1, 2015 (her amended onset date), expressly waived the right to proceed on her Disability Insurance Benefits claim, and proceeded only on her claim for

5

Supplemental Security Income. Under the circumstances, the court would be hard pressed to find that the ALJ erred as a matter of law in denying her claim for Disability Insurance Benefits.

Social Security Ruling 16-3p, which issued new guidelines on how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated, became effective on March 28, 2016, but isn't retroactive, so the old standard, SSR 96-7p., governs the ALJ's credibility determination in this case. Veldhuizen v. Berryhill, No. 4:15-CV-103 PRC, 2017 WL 1030834, at *10 (N.D. Ill. Mar 16, 2017).

In making a disability determination, the ALJ must consider:

> the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record [*e.g.*, the individuals daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medications; treatment for relief of pain or other symptoms; other methods taken to relieve pain or other symptoms; and other factors concerning functional limitations due to pain or other symptoms].

Arnold v. Barnhart, 473 F.3d 816, 823 (7th Cir. 2007) (quoting Social Security Ruling 96-7p); 20 C.F.R. § 404.1929(c)(3).

The ALJ found that Ms. Frye's impairments could reasonably be expected to cause the symptoms she alleged, but that "[her] statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not entirely consistent [with]":

6

> (1) her "sporadic work history";
>
> (2) the lack of "intensive" treatments, assistive devices, in-home supports, or in-patient treatments;
>
> (3) improvement in her condition when she "maintained her medication regime";
>
> (4) an "x-ray" (the Dec 15, 2015 MRI) of the lumbar spine that showed only "'mild' degenerative facet changes at the L5-S1 level, a broad disc herniation at the L5-S1 level, and degenerative disc changes at L4-5 without focal herniation or central stenosis"; and
>
> (5) assessments by agency consulting and/or examining physicians, Drs. O. Villoreal and B. Whitely, Craig Nordstrom, Ph.D., and Joelle Larsne, Ph.D..

The ALJ gave little or no weight to treating source assessments that supported Ms. Frye's claim, most notably a Mental RFC Questionnaire completed by Ms. Frye's treating physician at Oaklawn, Dr. LaRissa Chism-Buggs, on March 4, 2016 (AR 686-690). But Ms. Frye didn't raise that issue on appeal, arguing instead that the ALJ's conclusion that the "radiographic evidence" – the MRI showing nerve root compression – didn't support her subjective complaints. The evidence of nerve root compression is significant, *see* Listing 1.04 (disorders of the spine), and might, or might not, have provided the medical corroboration the ALJ needed to believe more, or all, of Ms. Frye's testimony. While the ALJ discussed some of the MRI report, he made no mention of the finding of nerve root

7

compression – a material omission that can't be clarified or corrected on appeal. The law requires the discussion and decision to come from the ALJ, not counsel, *see* Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194 (1947); Gutierrez v. Lynch, 834 F.3d 800, 806 (7th Cir. 2016); Hanson v. Colvin, 760 F.3d 759, 762 (7th Cir. 2014); Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010), and the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d at 513; Powers v. Apfel, 207 F.3d at 434-435.

The only objection to the ALJ's assessment of Dr. Whitley's opinion was that it predated the MRI, and needed to be updated. The court agrees, and anticipates that the parties will develop the record further on remand. *See* Nicholson v. Astrue, 341 Fed. App'x 248, 254 (7th Cir. 2009) ("The degree of the ALJ's responsibility to take the initiative [to solicit additional evidence] is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant."); Smith v. Apfel, 231 F.3d 433, 437(7th Cir. 2000) (ALJ has a duty to develop a full and fair record, even when claimant is represented by counsel); Glenn v. Secretary of Health & Human Servs., 814 F2d 387, 391 (7th Cir. 1987) (Where an applicant is represented by an attorney, it may be assumed that the applicant is making his "strongest case for benefits.").

The burden at step 5 of the disability evaluation is on the Commissioner to show that the claimant can perform other work that "exists in significant numbers in the national economy." 20 C.F.R. 404.1560(c)(2); *see also* Overman v. Astrue,

546 F.3d at 464; Britton v. Astrue, 521 F.3d 799, 803 (7th Cir. 2008). The ALJ ordinarily should include all limitations supported by the medical evidence in the hypothetical to ensure that the vocational expert has all the relevant information needed to provide a fully informed and reliable answer, Kasarsky v. Barnhart, 335 F.3d 539, 543-544 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002), but must incorporate only those limitations that he accepts as credible. Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007); Sims v. Barnhart, 309 F.3d 424, 432 (7th Cir. 2002) (no error when ALJ told vocational expert to consider only those impairments that were supported by evidence in the record). The ALJ didn't do that in this case.

The ALJ found at step 2 that Ms. Frye had moderate limitations in social functioning and concentration, persistence, and/or pace, and that her ability to interact independently, appropriately, effectively, and on a sustained basis with other people was limited, as was her ability to sustain focus, attention, and concentration long enough to permit the timely and appropriate completion of tasks commonly found in work settings, but he included none of those limitations in his hypothetical to the vocational expert. He simply asked if there were jobs the claimant could perform if she was: "limited to perform simple, routine tasks," "[could] have frequent contact with supervisors, coworkers, and the public", and was "limited to simple work related decisions." That is insufficient. *See* Varga v. Colvin, 794 F.3d 809, 814-15 (7th Cir. 2015).

9

IV. Conclusion

The evidence presented to the ALJ doesn't conclusively establish that Ms. Frye is disabled or entitled to benefits, but she has presented objective medical evidence – the MRI showing nerve root compression – that could have validated her subjective complaints regarding the severity and limiting effects of her back impairment. The ALJ didn't discuss that evidence, erroneously concluded that the MRI didn't support Ms. Frye's subjective complaints, and relied on a residual functional capacity assessment that predated the MRI. The ALJ also erred when he failed to include all of Ms. Frye's mental limitations in his hypothetical to the vocational expert, and relied on her testimony to find that Ms. Frye was capable of performing other jobs.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   October 16, 2017

/s/ Robert L. Miller, Jr.
Judge, United States District Court
Northern District of Indiana